TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA*
*Collective and potential Rule 23 Class Plaintiffs*
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
johntroy@troypllc.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
SHENG WEI YU,
KENICHI MURAKI,
WEI JIE YU, and
AIMEE LACADEN,
*on behalf of themselves and others similarly situated,*
                                        Plaintiffs,

                        v.

ERIC KIM,
                                        Defendant.
-----------------------------------------------------------------x

**Case No: 18-cv-07001**

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**FED. R. CIV. P. 23 CLASS**
**ACTION**

**COMPLAINT**

Plaintiffs SHENG WEI YU (hereafter referred to as "Plaintiff SHENG WEI YU"), KENICHI MURAKI  (hereafter referred to as "Plaintiff MURAKI"), WEI JIE YU (hereafter referred to as "Plaintiff WEI JIE YU"), and AIMEE LACADEN (hereafter referred to as "Plaintiff LACADEN"), on behalf of themselves and others similarly situated (collectively "Plaintiffs"), by and through their attorney, Troy Law, PLLC, hereby bring this complaint against Defendant ERIC KIM (hereinafter "Defendant"), and allege as follows:

## INTRODUCTION

1.  This action is brought by Plaintiffs, on behalf of themselves as well as other similarly situated employees against Defendant ERIC KIM for alleged violations of the Fair Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et seq.* and of the New York Labor Law ("NYLL"), arising from Defendant ERIC KIM's various willful and unlawful employment policies, patterns

and/or practices.

2.   Upon information and belief, Defendant ERIC KIM has willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, minimum wage and overtime compensation for all hours worked over forty (40) each workweek.

3.   Defendant ERIC KIM willfully failed to record all of the time that Plaintiffs and similarly situated employees work or worked, including all work done in excess of forty hours each week.

4.   Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendant ERIC KIM: (1) unpaid minimum wage, (2) unpaid overtime wages, (3) liquidated damages, (4) prejudgment and post-judgment interest; and/or (5) attorneys' fees and costs.

5.   Plaintiff further alleges pursuant to NYLL § 650 *et seq*. and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that he is entitled to recover from the Defendant ERIC KIM: (1) unpaid minimum wage compensation, (2) unpaid overtime compensation, (3) unpaid "spread of hours" compensation, (4) liquidated damages equal to the sum of unpaid minimum wage, unpaid overtime, unpaid "spread of hours," in the amount of twenty five percent under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (5) up to five thousand dollars ($5,000) per Plaintiff for Defendant's failure to provide a Time of Hire Notice detailing rates of pay and payday, (6) up to five thousand dollars ($5,000) per Plaintiff for Defendant ERIC KIM's failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each

pay day, (7) 9% simple prejudgment interest provided by NYLL, (8) post-judgment interest, and (9) attorney's fees and costs.

## PROCEDURAL HISTORY

6. Plaintiffs initially filed an action in the United States District Court, Eastern District of New York (Case No. 17-cv-04202) against Defendants KOTOBUKI RESTAURANT, INC. d/b/a Kotobuki and d/b/a Kotobuki-Hauppauge; KOTOBUKI ROSLYN, INC d/b/a Kotobuki and d/b/a Kotobuki Roslyn; KOTOBUKI BABYLON, INC. d/b/a Kotobuki and d/b/a Kotobuki Babylon; KOTOBUKI MANHATTAN, INC. d/b/a Kotobuki and d/b/a Kotobuki-Manhattan; KTOOBUKI MANAGEMENT, INC d/b/a Kotobuki; and YOSHIHIRO NARITA on or about July 14, 2017.

7. The present Complaint is a related case, brought against ERIC KIM, who, as an active manager at each of the Kotobuki locations (Kotobuki-Hauppauge, Kotobuki-Roslyn, Kotobuki-Babylon and Kotobuki-Manhattan) Manager and part owner, is jointly and severally liable with KOTOBUKI RESTAURANT, INC. d/b/a Kotobuki and d/b/a Kotobuki-Hauppauge; KOTOBUKI ROSLYN, INC d/b/a Kotobuki and d/b/a Kotobuki Roslyn; KOTOBUKI BABYLON, INC. d/b/a Kotobuki and d/b/a Kotobuki Babylon; KOTOBUKI MANHATTAN, INC. d/b/a Kotobuki and d/b/a Kotobuki-Manhattan; KOTOBUKI MANAGEMENT, INC d/b/a Kotobuki; and YOSHIHIRO NARITA.

## JURISDICTION AND VENUE

8. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

9. This Court has jurisdiction over state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

10. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)

and (c), because Defendant ERIC KIM conducts business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

11. Plaintiff SHENG WEI YU was employed by Defendant ERIC KIM as a waiter for KOTOBUKI RESTAURANT, INC. d/b/a Kotobuki d/b/a Kotobuki-Hauppauge at 377 Nesconset Highway, Hauppauge, NY 11788.

12. Plaintiff MURAKI was employed by Defendant ERIC KIM as a sushi chef for KOTOBUKI RESTAURANT, INC. d/b/a Kotobuki d/b/a Kotobuki-Hauppauge at 377 Nesconset Highway, Hauppauge, NY 11788; for KOTOBUKI ROSLYN, INC. d/b/a Kotobuki, d/b/a Kotobuki-Roslyn at 1530 Old Northern Boulevard, Roslyn, NY 11576, and KOTOBUKI BABYLON, INC. d/b/a Kotobuki at 86 Deer Park Avenue, Babylon, NY 11702.

13. Plaintiff WEI JIE YU was employed by Defendant ERIC KIM as a sushi chef at 56 Third Avenue, New York, NY 10003.

14. Plaintiff LACADEN was employed by Defendant ERIC KIM as a waitress at 377 Nesconset Highway, Hauppauge, NY 11788.

## DEFENDANT

### *Owner/Operator Defendant*

15. Owner/Operator Defendant ERIC KIM (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at KOTOBUKI ROSLYN, INC d/b/a Kotobuki and d/b/a Kotobuki Roslyn; KOTOBUKI BABYLON, INC. d/b/a Kotobuki and d/b/a Kotobuki Babylon; KOTOBUKI MANHATTAN, INC. d/b/a Kotobuki and d/b/a Kotobuki-Manhattan; and KOTOBUKI MANAGEMENT, INC d/b/a Kotobuki.

16. ERIC KIM began his career at Kotobuki as the manager at Kotobuki-Roslyn the same year

Kotobuki-Roslyn opened for business.

17. When Kotobuki-Manhattan opened for business, ERIC KIM was transferred to Kotobuki-Manhattan to become the manager at that location.

18. During the period relevant to this lawsuit, Kotobuki-Manhattan was sold to a third party, and ERIC KIM was transferred back to Kotobuki-Roslyn.

19. Subsequently, Kotobuki-Manhattan was re-acquired by KOTOBUKI MANHATTAN, INC. and YOSHIHIRO NARITA, and ERIC KIM was transferred back to Kotobuki-Manhattan. At or around this time, ERIC KIM was made a part-owner of KOTOBUKI MANHATTAN, INC.

20. After the related lawsuit was filed in July of 2017, ERIC KIM was promoted from site manager of Kotobuki-Manhattan to general manager of the entire Kotobuki enterprise, responsible for, among other things, signing each employee's check, and paying employees, at Kotobuki-Hauppauge, Kotobuki-Roslyn, Kotobuki-Babylon, and Kotobuki-Manhattan.

21. Pursuant to his duties as general manager, ERIC KIM has instructed employees at all Kotobuki locations to, among other things, decrease the amount of time the kitchen will be cooking food, and to join a rotation packing food on the weekends so that Kotobuki does not need a dedicated packer for those days.

22. Furthermore, pursuant to his duties as general manager ERIC KIM has transferred employees, including an employee known as "Mara," upon information and belief opt-in plaintiff MARAYUT FARREL, from location to location. In Mara's case, he gave her an ultimatum: accept the transfer from Babylon to Hauppauge, or be terminated.

23. ERIC KIM acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with KOTOBUKI RESTAURANT, INC.

d/b/a Kotobuki d/b/a Kotobuki-Hauppauge, KOTOBUKI ROSLYN, INC. d/b/a Kotobuki, d/b/a Kotobuki-Roslyn, KOTOBUKI BABYLON, INC. d/b/a Kotobuki, d/b/a Kotobuki-Babylon, KOTOBUKI MANHATTAN, INC. d/b/a Kotobuki d/b/a Kotobuki-Manhattan, and KOTOBUKI MANAGEMENT, INC. d/b/a Kotobuki.

## STATEMENT OF FACTS

***Defendant ERIC KIM Committed the Following Alleged Acts Knowingly, Intentionally and Willfully against the Plaintiff, the FLSA Collective Plaintiffs, and the Class***

24. At all relevant times, Defendant ERIC KIM knowingly and willfully failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

25. While employed by Defendant ERIC KIM, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

26. At all relevant times, Defendant ERIC KIM knowingly and willfully failed to pay Plaintiffs and similarly situated employees their lawful overtime of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

27. At all relevant times, Defendant ERIC KIM knowingly and willfully failed to pay Plaintiffs and similarly situated employees their lawful spread of hours for workdays that began and ended ten (10) hours apart.

28. At all relevant times, Defendant ERIC KIM knowingly and willfully failed to keep full and accurate records of Plaintiffs' hours worked and wages paid.

29. At all relevant times, Defendant ERIC KIM maintained a computerized time keeping system. At all relevant times, Defendant ERIC KIM required Plaintiffs and similarly situated employees to enter the times they started to work, at the times they started to work. However, when employees finished working, they were required to enter a finishing time that was a set interval apart from their start time, rather than the actual time they finished work.

30. Plaintiffs were required to report that they worked four (4) hours for the morning shift Mondays through Fridays, six (6) hours for the evening shift Sundays through Thursdays, six and one half (6.5) hours for the evening shift on Fridays, and seven (7) hours for the evening shift on Saturdays.

31. Defendant ERIC KIM failed to keep full and accurate records in order to mitigate liability for wage violations.

32. At all relevant times, Defendant ERIC KIM knowingly and willfully failed to furnish Plaintiffs and similarly situated employees notice that they were claiming tip credit towards Plaintiffs' and similarly situated employees' minimum wage.

33. At all relevant times, Defendant ERIC KIM required Plaintiffs and similarly situated employees to share their tips with employees working as packers and hostesses, without Plaintiffs' and similarly situated employees' written consent or as part of a lawful tip sharing agreement.

34. At all relevant times, Defendant ERIC KIM knowingly and willfully retained a portion of Plaintiffs' and similarly situated employees' tips without Plaintiffs' and similarly situated employees' written consent or as part of a lawful tip sharing agreement.

35. At all relevant times, Defendant ERIC KIM knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notices in their primary languages reflecting rates of pay and payday as well as paystubs that listed the employee's name, the employer's name, the employer's address and telephone number, the employee's rate or rates of pay, any deductions made from employees' wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

36. At all relevant times, Defendant ERIC KIM knowingly and willfully failed to provide Plaintiff and similarly situated employees with statements every payday in their primary languages

that accurately listed all of the following: the dates of work covered by that payment of wages;  the employee's name; the name of the employer;  the address and phone number of the employer;  the employee's rate or rates of pay and basis thereof; the employee's gross wages;   the employee's deductions;  allowances, if any, claimed as part of the minimum wage;  net wages; the employee's regular hourly rate or rates of pay; the employee's overtime rate or rates of pay;  the employee's number of regular hours worked, and the employee's number of overtime hours worked.

37. Pursuant to 12 NYCRR § 146-2.2 and 29 U.S.C. § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of tip credit.

38. Defendant ERIC KIM knew that the nonpayment of wages for all hours worked and the nonpayment of wages at one and one-half time (1.5x) employees' regular rates would financially injure Plaintiffs and similarly situated employees, and violate state and federal laws.

39. At all relevant times, Defendant ERIC KIM failed to post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, and pay day.

***Plaintiff SHENG WEI YU***

40. From on or about August 20, 2016 to March 8, 2017, Plaintiff SHENG WEI YU was employed by Defendant ERIC KIM to work as a waiter at Kotobuki-Hauppauge, 377 Nesconset Highway, Hauppauge, NY 11788.

41. From on or about August 20, 2016 to March 8, 2017, Plaintiff SHENG WEI YU worked:

 a.  Tuesdays and Thursdays from 11:00 to 15:15, then from 16:30 to 23:00, or ten and three-quarters (10.75) hours per day;

 b.  Fridays from 11:00 to 15:15, then from 16:30 to 23:30, or eleven and one quarter (11.25) hours per day;

 c.  Saturdays from 16:00 to 23:30, or seven and one half (7.5) hours per day; and.

     d.   Sundays from 16:00 to 22:30, or six and one half (6.5) hours per day.

42. In total, from on or about August 20, 2016 to March 8, 2017, Plaintiff SHENG WEI YU worked forty-six and three-quarters (46.75) hours per week.

43. Plaintiff SHENG WEI YU was required to spend the following times each day performing non-tipped side work:

     a.   Tuesdays and Thursdays from 11:00 to 12:00, from 16:30 to 17:30, and from 22:00 to 23:00, or three (3) hours per day;

     b.   Fridays from 11:00 to 12:00, from 16:30 to 17:30, and from 22:30 to 23:00, or three (3) hours per day;

     c.   Saturdays from 16:00 to 17:00, and from 22:30 to 23:30, or two (2) hours per day; and

     d.   Sundays from 16:00 to 17:00, and from 21:30 to 22:30, or two (2) hours per day.

44. The non-tipped side work Plaintiff SHENG WEI YU was required to perform included: vacuuming, mopping, and sweeping the floor; cleaning the bathrooms; making salads, soups, and coffee; wiping down vacated tables and replacing the place settings (plates, glasses, chopsticks, and forks), filling soy sauce containers at the tables; helping the sushi chef; supplying the kitchen chef; keeping the liquor window stocked; cleaning the front door and front window; and purchasing supplies, including iced tea, from the supermarket.

45. Plaintiff SHENG WEI YU's non-tipped side work amounted to between twenty-eight percent (28%) and thirty-one percent (31%) of his working day.

46. Despite him spending more than two (2) hours and more than twenty-eight percent (28%) of each working day performing non-tipped side work, Defendant ERIC KIM willfully claimed a tip credit against Plaintiff SHENG WEI YU's minimum wage.

47. Throughout his employment, Plaintiff SHENG WEI YU was paid at a rate of seven dollars and fifty cents per hour ($7.50/hr).

48. From August 20, 2016 to December 30, 2016, New York's minimum wage was nine dollars per hour ($9.00/hr).

49. From December 31, 2016 to March 8, 2017, New York's minimum wage for Nassau, Suffolk, and Westchester Counties was ten dollars per hour ($10.00/hr).

50. Plaintiff SHENG WEI YU was paid every Thursday, by check, for the period beginning the previous Sunday and ending the previous Saturday. For example, for the period he worked beginning on Sunday, August 21, 2016 and ending Saturday, August 27, 2016, Plaintiff was paid on Thursday, September 1, 2016.

51. Plaintiff SHENG WEI YU received pay stubs along with his payment, in English only. Plaintiff SHENG WEI YU's primary language is Chinese. Not all of Plaintiff SHENG WEI YU's paystubs included a notice that Defendant ERIC KIM were claiming a tip credit against the minimum wage, and those that did contained said notice only in English.

52. Plaintiff SHENG WEI YU's paystubs consistently underreported his hours worked.

53. Plaintiff SHENG WEI YU was not paid at least the minimum wage for all hours he worked during the week.

54. Plaintiff SHENG WEI YU was not paid his full overtime rate for all hours worked beyond forty (40) each week.

55. Plaintiff SHENG WEI YU was not paid spread of hours for all days worked longer than ten (10) hours.

56. Kotobuki-Hauppauge had no dedicated host.

57. Each day, one person from the waitstaff would be chosen to serve as the host for the whole

day.

58. In addition, every Friday, Saturday, and Sunday, one person from the waitstaff would be chosen to serve as a packer (packing food for delivery or for customer pickup) for the whole day.

59. On Mondays through Thursdays, every waiter was expected to pack when they had time.

60. Members of the waitstaff who were waiting tables were required to share their tips with hosts and packers.

61. Hosts and packers did not receive tips directly from customers, but only through tip-sharing with members of the waitstaff.

62. Members of the waitstaff preferred hosting to packing, because it was lower-intensity work.

63. Invariably, however, it was waitresses rather than waiters who were chosen to host. Plaintiff SHENG WEI YU was never chosen to host, and never saw a waiter chosen to host. Upon information and belief, refusing to choose men to host was a policy set by YOSHIHIRO NARITA.

64. There were approximately six (6) full-time waiters, and seven (7) to eight (8) part-time waiters who worked lunch and weekend shifts.

65. By participating in the above tip-sharing scheme, therefore, Plaintiff SHENG WEI YU was deprived of approximately one sixth (1/6) of his tips.

66. Throughout his employment, Plaintiff SHENG WEI YU was afforded one rest break—between 14:30 and 15:15—and one meal break—between 15:15 and 16:30—Tuesdays, Thursday, and Fridays. Plaintiff SHENG WEI YU was afforded neither a meal break nor a rest break on Saturdays and Sundays.

### Plaintiff KENICHI MURAKI

67. From on or about 1997 to February 28, 2017, Plaintiff MURAKI was employed by Defendant ERIC KIM to work as a sushi chef.

68. Plaintiff MURAKI primarily worked at 1530 Old Northern Boulevard, Roslyn, NY 11576,

and was always paid by KOTOBUKI ROSLYN, INC. d/b/a Kotobuki, d/b/a Kotobuki-Roslyn, but was frequently required to work at Kotobuki-Hauppauge located at 377 Nesconset Highway, Hauppauge, NY 11788 and Kotobuki-Babylon located at 86 Deer Park Avenue, Babylon, NY 11702.

69. Throughout his employment, Plaintiff MURAKI worked:

    a.   Tuesdays, Thursdays, and Fridays from 09:00 to 14:30, then from 16:30 to 23:00, or twelve (12) hours per day;

    b.   Saturdays from 14:00 to 23:00, or nine (9) hours per day; and

    c.   Sundays from 14:00 to 22:00, or eight (8) hours per day.

70. In total, throughout his employment, Plaintiff MURAKI worked fifty-three (53) hours per week.

71. Plaintiff MURAKI did not receive tips and did not participate in a tip pool.

72. Throughout his employment, Plaintiff MURAKI was paid at a rate of nine hundred fifty dollars ($950.00) per week.

73. Plaintiff MURAKI was paid every Thursday, by check, for the period beginning the previous Sunday and ending the previous Saturday.

74. Plaintiff MURAKI was not paid at least the minimum wage for all hours he worked during the week.

75. Plaintiff MURAKI was not paid his full overtime rate for all hours worked beyond forty (40) each week.

76. Plaintiff MURAKI was not paid spread of hours for all days worked longer than ten (10) hours.

77. Throughout his employment, Plaintiff MURAKI was afforded one rest break—between

14:30 and 16:30—Tuesdays, Thursday, and Fridays. Plaintiff MURAKI was afforded neither a meal break nor a rest break on Saturdays and Sundays.

***Plaintiff WEI JIE YU***

78. From on or about October 10, 2016 to October 28, 2016, Plaintiff WEI JIE YU was employed by Defendant ERIC KIM to work as a sushi chef at 56 Third Avenue, New York, NY 10003.

79. Throughout his employment, Plaintiff WEI JIE YU worked:

    a.  Mondays through Thursdays, with either Tuesdays or Wednesdays off, from 11:00 to 15:00, then from 16:30 to 22:00, or nine and one half (9.5) hours per day;

    b.  Fridays and Saturdays from 11:00 to 15:00 and then from 16:30 to 23:00, or ten and one half (10.5) hours per day; and

    c.  On Sundays from 14:00 to 22:00, or eight (8) hours per day.

80. In total, throughout his employment, Plaintiff WEI JIE YU worked fifty-seven and one half (57.5) hours per week.

81. Plaintiff WEI JIE YU did not receive tips and did not participate in a tip pool.

82. Throughout his employment, Plaintiff WEI JIE YU was paid at a rate of seven hundred dollars ($700.00) per week, $350.00 by check and $350.00 by cash.

83. Plaintiff WEI JIE YU was paid every Thursday, by check, for the period beginning the previous Sunday and ending the previous Saturday.

84. Plaintiff WEI JIE YU was not paid at least the minimum wage for all hours he worked during the week.

85. Plaintiff WEI JIE YU was not paid his full overtime rate for all hours worked beyond forty (40) each week.

86. Plaintiff WEI JIE YU was not paid spread of hours for all days worked longer than ten

(10) hours.

87. Throughout his employment, Plaintiff WEI JIE YU was afforded one rest break—between 15:00 and 16:30—Mondays through Saturdays. Plaintiff WEI JIE YU was not afforded a meal break or a rest break on Sundays.

**Plaintiff AIMEE LACADEN**

88. From on or about August 7, 2016 to April 7, 2017, Plaintiff LACADEN was employed by Defendant ERIC KIM to work as a waiter at Kotobuki-Hauppauge, 377 Nesconset Highway, Hauppauge, NY 11788.

89. From on or about August 7, 2016 to November 30, 2016, Plaintiff LACADEN worked:

    a. Tuesdays from 16:30 to 23:00, or six and one-half (6.5) hours per day;

    b. Wednesdays from 11:00 to 15:15, then from 16:30 to 23:00, or ten hours and three-quarters (10.75) hours per day;

    c. Fridays from 11:00 to 15:15, then from 16:30 to 23:30, or eleven and one quarter (11.25) hours per day;

    d. Saturdays from 16:00 to 23:30, or seven and one half (7.5) hours per day; and.

    e. Sundays from 16:00 to 22:30, or six and one half (6.5) hours per day.

90. In total, from on or about August 7, 2016 to November 30, 2016, Plaintiff LACADEN worked forty-two and one-half (42.5) hours per week.

91. From on or about August 7, 2016 to November 30, 2016, Plaintiff LACADEN was required to spend the following times each day performing non-tipped side work:

    a. Tuesdays from 16:30 to 17:00 and from 22:30 to 23:00, or one (1) hours per day;

    b. Wednesdays from 11:00 to 12:00, then from 16:30 to 17:30, and from 22:00 to 23:00, or three (3) hours per day;

    c. Fridays from 11:00 to 12:00, then from 16:30 to 17:30, and from 22:30 to 23:30, or

three (3) hours per day;

  d. Saturdays from 16:00 to 17:00, and from 22:30 to 23:30, or two (2) hours per day; and

  e. Sundays from 16:00 to 17:00, and from 21:30 to 22:30, or two (2) hours per day.

92. From on or about December 1, 2016 to April 7, 2017, Plaintiff LACADEN worked:

  a. Three out of every four Thursdays from 11:00 to 15:15, then from 16:30 to 23:00, or ten hours and three-quarters (10.75) hours per day;

  b. One out of every four Thursdays from 16:30 to 23:00, or six and one-half (6.5) hours per day;

  c. Saturdays from 16:00 to 23:30, or seven and one half (7.5) hours per day; and.

  d. Two out of every three Sundays from 16:00 to 22:30, or six and one half (6.5) hours per day.

93. In total, from on or about December 1, 2016 to April 7, 2017, Plaintiff LACADEN worked between fourteen (14) and twenty-four and three quarters (24.75) hours per week.

94. From on or about December 1, 2016 to April 7, 2017, Plaintiff LACADEN was required to spend the following times each day performing non-tipped side work:

  a. Three out of every four Thursdays from 11:00 to 12:00, then from 16:30 to 17:30, and from 22:00 to 23:00, or three (3) hours per day;

  b. One out of every four Thursdays from 16:30 to 17:00, then from 22:30 to 23:00, or one (1) hours per day;

  c. Saturdays from 16:00 to 17:00, then from 22:30 to 23:30, or two (2) hours per day; and.

  d. Two out of every three Sundays from 16:00 to 17:00, then from 21:30 to 22:30, or

two (2) hours per day.

95. The non-tipped side work Plaintiff LACADEN was required to perform included: vacuuming, mopping, and sweeping the floor; cleaning the bathrooms; making salads, soups, and coffee; wiping down vacated tables and replacing the place settings (plates, glasses, chopsticks, and forks), filling soy sauce containers at the tables; helping the sushi chef; supplying the kitchen chef; keeping the liquor window stocked; cleaning the front door and front window; and purchasing supplies, including iced tea, from the supermarket.

96. Plaintiff LACADEN's non-tipped side work amounted to between fifteen percent (15%) and thirty-one percent (31%) of her working day, and typically more than twenty-seven percent (27%) of her working day.

97. Despite her spending more than two (2) hours and more than twenty-seven percent (27%) of each working day performing non-tipped side work, Defendant ERIC KIM willfully claimed a tip credit against Plaintiff LACADEN's minimum wage.

98. Throughout her employment, Plaintiff LACADEN was paid at a rate of seven dollars and fifty cents per hour ($7.50/hr).

99. From August 7, 2016 to December 30, 2016, New York's minimum wage was nine dollars per hour ($9.00/hr).

100.      From December 31, 2016 to April 7, 2017, New York's minimum wage for Nassau, Suffolk, and Westchester Counties was ten dollars per hour ($10.00/hr).

101.      Plaintiff LACADEN was paid every week, by check.

102.      Plaintiff LACADEN did not receive a pay stub in her primary language, Chinese, with every paycheck.

103.      Plaintiff LACADEN's paystubs consistently underreported her hours worked.

104.     Plaintiff LACADEN was not paid at least the minimum wage for all hours she worked during the week.

105.     Plaintiff LACADEN was not paid her full overtime rate for all hours worked beyond forty (40) each week.

106.     Plaintiff LACADEN was not paid spread of hours for all days worked longer than ten (10) hours.

107.     Kotobuki-Hauppauge had no dedicated host.

108.     Each day, one person from the waitstaff would be chosen to serve as the host for the whole day.

109.     In addition, every Friday, Saturday, and Sunday, one person from the waitstaff would be chosen to serve as a packer (packing food for delivery or for customer pickup) for the whole day.

110.     On Mondays through Thursdays, every waiter was expected to pack when they had time.

111.     Members of the waitstaff who were waiting tables were required to share their tips with hosts and packers.

112.     Hosts and packers did not receive tips directly from customers, but only through tip-sharing with members of the waitstaff.

113.     From on or about August 7, 2016 to November 30, 2016, Plaintiff LACADEN was afforded one rest break—between 14:30 and 15:15—and one meal break—between 15:15 and 16:30—Wednesdays, and Fridays. Plaintiff LACADEN was afforded neither a meal break nor a rest break on Tuesdays, Saturdays and Sundays.

114.     From on or about December 1, 2016 to April 7, 2017, Plaintiff LACADEN was

afforded one rest break—between 14:30 and 15:15—and one meal break—between 15:15 and 16:30—the three out of four Thursdays she worked from 11:00 to 23:00. Plaintiff LACADEN was afforded neither a meal break nor a rest break the remaining one out of every four Thursdays, or Saturdays and Sundays.

<u>**COLLECTIVE ACTION ALLEGATIONS**</u>

115.     Plaintiffs bring this action individually and on behalf of all other and former non-exempt employees, including but not limited to waitstaff, kitchen workers, sushi chefs, dishwashers, hosts, packers, bussers, and cashiers, who have been or were employed by the Defendant ERIC KIM for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and who were not compensated at least the hourly minimum wage and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

116.     Plaintiffs also bring this action individually and on behalf of non-exempt employees deliverymen who were subject to illegal retention of their tips and who were required to participate in an unlawful tip pool in contravention of 29 U.S.C. §203(m) and (t).

<u>**CLASS ACTION ALLEGATIONS**</u>

117.     Plaintiffs bring their NYLL claims pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23, on behalf of all non-exempt personnel employed by Defendant ERIC KIM on or after December 31, 2015 (the "Class Period").

118.     All said persons, including Plaintiffs, are referred to herein as the "Class."

119.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendant ERIC KIM. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendant ERIC KIM's records. For purpose of notice and other purposes related to this action,

their names and addresses are readily available from Defendant ERIC KIM. Notice can be provided by means permissible under said F.R.C.P 23.

*Numerosity*

120.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendant ERIC KIM, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

121.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendant ERIC KIM employed Plaintiffs and the Class within the meaning of the New York law;

b.    Whether Plaintiffs and Class members are paid at least the minimum wage for each hour worked under the New York Labor Law;

c.    Whether Plaintiffs and Class members are entitled to and paid overtime under the New York Labor Law;

d.    Whether Plaintiffs and tipped Class members were subject to illegal tip retention;

e.    Whether Plaintiffs and tipped Class members were forced to acknowledge false and inaccurate information on their weekly paystub as a precondition of continued employment;

f.    Whether Defendant ERIC KIM maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

g.    Whether Defendant ERIC KIM maintained policy, pattern and/or practice of failing to provide requisite statutory meal periods;

h.   Whether Defendant ERIC KIM provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or or timely thereafter;

i.   Whether Defendant ERIC KIM provided full and accurate paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiff and the Rule 23 class on each payday; and

j.   At what common rate, or rates subject to common method of calculation was and is Defendant ERIC KIM required to pay the Class members for their work.

***Typicality***

122.   Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendant ERIC KIM, as alleged herein, of failing to pay minimum wage, failing to pay overtime, and failing to pay spread of hours. Defendant ERIC KIM's corporate wide policies and practices affected all Class members similarly, and Defendant ERIC KIM benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

***Adequacy***

123.   Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent representing Plaintiffs in both class action and wage and hour employment litigation cases.

*Superiority*

124.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against a common employer. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant ERIC KIM and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

125.     Upon information and belief, Defendant ERIC KIM and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to

secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [Fair Labor Standards Act—Failure to Pay Minimum Wage
### Brought on behalf of the Plaintiff and the FLSA Collective]

126.      Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

127.      At all relevant times, Defendant ERIC KIM had a policy and practice of refusing to pay Plaintiffs and similarly situated employees for some or all of the hours that they worked.

128.      At all relevant times, Defendant ERIC KIM had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the similarly situated collective action members, for some or all of the hours they worked.

129.      The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

130.      Defendant ERIC KIM knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiff and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

### COUNT II.
### [Violation of New York Labor Law—Failure to pay Minimum Wage
### Brought on behalf of the Plaintiff and the Rule 23 Class]

131.      Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

132.     At all relevant times, Plaintiffs were employed by Defendant ERIC KIM within the meaning of New York Labor Law §§ 2 and 651.

133.     At all relevant times, Defendant ERIC KIM had a policy and practice of refusing to pay Plaintiffs and the class members for some or all of the hours they worked.

134.     At all relevant times, Defendant ERIC KIM had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff, and the class members, for some or all of the hours they worked.

135.     Defendant ERIC KIM knowingly and willfully violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

136.     An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiff and the FLSA Collective]

137.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

138.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC § 207(a).

139.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. §

207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

140.     Defendant ERIC KIM'S failure to pay Plaintiff and the FLSA Collective their overtime pay violated the FLSA.

141.     At all relevant times, Defendant ERIC KIM had, and continue to have, a policy and practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

142.     The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

143.     Defendant ERIC KIM willfully failed to notify Plaintiff and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA Collectives' labor.

144.     Defendant ERIC KIM knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

### COUNT IV.
### [Violation of New York Labor Law—Failure to Pay Overtime
### Brought on behalf of Plaintiff and the Rule 23 Class]

145.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

146.     An employer who fails to pay the minimum wage shall be liable, in addition to the

amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) under NY Wage Theft Prevention Act, and interest.

147.    At all relevant times, Defendant ERIC KIM had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one half times the hourly rate the Plaintiffs and the class are entitled to.

148.    Defendant ERIC KIM's failure to pay Plaintiffs their overtime pay violated the NYLL.

149.    Defendant ERIC KIM's failure to pay Plaintiffs was not in good faith.

## COUNT V.
### [Violation of the Fair Labor Standards Act—Unlawful Tip Retention
### Brought on behalf of Plaintiff and the FLSA Collective]

150.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

151.    A tip is the sole property of the tipped employee regardless of whether the employer takes a tip credit.

152.    The FLSA, 29 U.S.C. §§ 203(m) and (t), prohibits any arrangement between the employer and tipped employee whereby any part of the tip received becomes the property of the employer.

153.    Retaining portions of the tips from Kotobuki waiters to unjustly enrich the Defendant ERIC KIM's or using portion of the tips to pay non-tipped employees is prohibited under the FLSA.

## COUNT VI.
### [Violation of New York Labor Law—Unlawful Tip Retention
### Brought on behalf of Plaintiff and the Rule 23 Class]

154.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

155.     NYLL § 196-d of the New York State Labor Law prohibits employers from demanding, accepting, or retaining, directly or indirectly, any part of an employee's gratuity or any charge purported to be a gratuity.

156.     A charge purported to be a gratuity must be distributed in full as gratuities to the service employees or food service workers who provided the service.

157.     12 NYCRR § 146-2.18 provides that there shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for "service" or "food service," is a charge purported to be a gratuity.

158.     12 NYCRR §146-2.20 provides that when tips are charged on credit cards, the employer must return to the employee the full amount of the tip charged on credit card minus the pro-rated portion of the tip taken by the credit card company.

159.     Employers are prohibited from unjustly enriching themselves by charging their employees a gratuities service fee charge which exceed the costs of converting credit card gratuities into cash.

### COUNT VII.
### [Violation of New York Labor Law—Failure to Pay Spread of Time Brought on behalf of Plaintiff and the Rule 23 Class]

160.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

161.     The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

162.     Defendant ERIC KIM's failure to pay Plaintiff spread-of-hours pay was not in good faith.

## COUNT VIII.
### [Violation of New York Labor Law—Failure to Keep Records
### Brought on behalf of Plaintiff and the Rule 23 Class]

163.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

164.    Defendant ERIC KIM did not maintain, establish and preserve Plaintiff' weekly payroll records for a period of not less than six years, as required by 12 NCYRR § 146-2.1.

165.    As a result of Defendant ERIC KIM's unlawful conduct, Plaintiff has sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

166.    Upon information and belief, Defendant ERIC KIM failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiff' labor.

167.    Defendant ERIC KIM's failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiff was not in good faith.

## COUNT IX.
### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice
### Brought on behalf of Plaintiff and the Rule 23 Class]

168.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

169.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the

telephone number of the employer. NYLL § 195-1(a).

170.     Defendant ERIC KIM intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or his first day of employment.

171.     Defendant ERIC KIM not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

172.     Due to Defendant ERIC KIM's violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law § 198(1-b).

## COUNT X.
### [Violation of New York Labor Law—Failure to Provide Pay Stubs Brought on behalf of Plaintiff and the Rule 23 Class]

173.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

174.     The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

175.     Defendant ERIC KIM has failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff' payday.

176.     Due to Defendant ERIC KIM's violations of New York Labor Law, each Plaintiff is entitled to recover from Defendant ERIC KIM, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)   Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendant ERIC KIM as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)   Certification of this case as a collective action pursuant to FLSA;

c)   Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)   A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)   An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

f)   An award of liquidated and/or punitive damages as a result of Defendant ERIC KIM's knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. § 216;

g)   Up to five thousand dollars ($5,000) per Plaintiff for Defendant ERIC KIM's failure to provide a Time of Hire Notice detailing rates of pay and payday;

h)   Up to five thousand dollars ($5,000) per Plaintiff for Defendant ERIC KIM's failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

i)   An award of liquidated and/ or punitive damages as a result of Defendant ERIC KIM's willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

j)   An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

k)   The cost and disbursements of this action;

l)   An award of prejudgment and post-judgment fees;

m) Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

n)   Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
December 9, 2018

TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA*
*Collective and potential Rule 23 Class*


_____/s/ John Troy_____
John Troy (JT0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Email: johntroy@troypllc.com